UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| In the Matter of the Search of:<br>Information associated with account identified as frumpy.powder-0b@icloud.com that is within the possession, custody, or control of Apple, Inc. | Case No. **2:23-MJ-01623** |

**WARRANT BY TELEPHONE PURSUANT TO 18 U.S.C. § 2703**

To:     Any Authorized Law Enforcement Officer

An application by a federal law enforcement officer requests the production and search of the following data:

*See Attachment A-2*

The data to be produced and searched, described above, are believed to contain the following:

*See Attachment B-2*

I find that the affidavit, or any recorded testimony, establishes probable cause to produce and search the data described in Attachment A-2, and to seize the data described in Attachment B-2. Such affidavit is incorporated herein by reference.

**AUTHORIZED LAW ENFORCEMENT OFFICER/S IS/ARE HEREBY COMMANDED** to serve this warrant on APPLE, INC. at any time within 14 days from the date of its issuance.

**APPLE, INC. IS HEREBY COMMANDED** to produce the information described in Attachment A within 10 calendar days of the date of service of this order. **APPLE, INC. IS FURTHER COMMANDED** to comply with the further orders set forth in Attachment B-2.

The officer executing this warrant, or an officer present during the execution, shall prepare an inventory as required by law, and shall promptly return this warrant and the inventory to the United States Magistrate Judge on duty at the time of the return through a filing with the Clerk's Office.

**AUTHORIZED LAW ENFORCEMENT OFFICER/S IS/ARE FURTHER COMMANDED** to perform the search of the data provided by APPLE, INC. pursuant to the procedures set forth in Attachment B-2.

Date and time issued: _____

City and State:     Los Angeles, CA    

_____
*Judge's signature*
Hon. Jean P. Rosenbluth, U.S. Magistrate Judge
*Printed name and title*

AUSA: Elizabeth Douglas (x5728)

| **Return** | |
|---|---|
| *Case No*: | *Date and time warrant served on provider:* |

*Inventory made in the presence of:*

*Inventory of data seized:*
[Please provide a description of the information produced.]

## Certification

*I declare under penalty of perjury that I am an officer involved in the execution of this warrant, and that this inventory is correct and was returned along with the original warrant to the designated judge through a filing with the Clerk's Office.*

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A-2

## PROPERTY TO BE SEARCHED

This warrant applies to information associated with SUBJECT ACCOUNT 3 identified as frumpy.powder-0b@icloud.com, and specifically including associated iCloud and iTunes accounts, that is within the possession, custody, or control of Apple Inc., a company that accepts service of legal process at One Apple Park Way, M/S 169-5CLP, Cupertino, California 95014-2084, regardless of where such information is stored, held, or maintained.

**ATTACHMENT B-2**

**ITEMS TO BE SEIZED**

I.   **SEARCH PROCEDURES**

1. The warrant will be presented to personnel of Apple, Inc. (the "PROVIDER"), who will be directed to isolate the information described in Section II below.

2. To minimize any disruption of service to third parties, the PROVIDER's employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the information described in Section II below.

3. The PROVIDER's employees will provide the Section II information in electronic form the exact duplicate of the information described in Section II below to the law enforcement personnel specified below in Section IV.

4. With respect to contents of wire and electronic communications produced by the PROVIDER (hereafter, "content records," see Section II.13.a. below), law enforcement agents and/or other individuals assisting law enforcement agents who are not participating in the investigation of the case and who are assigned as the "Privilege Review Team" will review the content records, according to the procedures set forth herein, to determine whether or not any of the content records appears to contain or refer to communications between an attorney, including Peter Johnson, Ryan Sakacs, and Michael Brown, or to contain the work product of an attorney and any person ("potentially privileged information"). The "Search Team" (law

enforcement personnel conducting the investigation and search and other individuals assisting law enforcement personnel in the search) will review only content records which have been released by the Privilege Review Team.  With respect to the non-content information produced by the PROVIDER (see Section II.13.b. below), no privilege review need be performed and the Search Team may review immediately.

     5.   The Search Team will provide the Privilege Review Team with a list of "privilege key words" to search for in the content records, to include specific words like "Peter Johnson," "Ryan Sakacs," and "Michael Brown," or their email addresses, and generic words such as "privileged" or "work product".  The Privilege Review Team will conduct an initial review of all of the content records by using the privilege key words, and by using search protocols specifically chosen to identify content records containing potentially privileged information.  Content records that are not identified by this initial review as potentially privileged may be given to the Search Team.

     6.   Content records that the initial review identifies as potentially privileged will be reviewed by a Privilege Review Team member to confirm that they contain potentially privileged information.  Content records determined by this review not to be potentially privileged may be given to the Search Team.  Content records determined by this review to be potentially privileged will be given to the United States Attorney's Office for further review by a Privilege Review Team Attorney ("PRT Attorney").  Content records identified by the PRT Attorney

ii

after review as not potentially privileged may be given to the Search Team. If, after review, the PRT Attorney determines it to be appropriate, the PRT Attorney may apply to the court for a finding with respect to particular content records that no privilege, or an exception to the privilege, applies. Content records that are the subject of such a finding may be given to the Search Team. Content records identified by the PRT Attorney after review as privileged will be maintained under seal by the investigating agency without further review absent subsequent authorization.

7. The Search Team will search only the content records that the Privilege Review Team provides to the Search Team at any step listed above in order to locate, extract and seize content records that are within the scope of the search warrant (see Section III below). The Search Team does not have to wait until the entire privilege review is concluded to begin its review for content records within the scope of the search warrant. The Privilege Review Team may also conduct the search for content records within the scope of the search warrant if that is more efficient. The search may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.

8. The search team will not seize contraband or evidence relating to other crimes outside the scope of the items to be seized without first obtaining a further warrant to search for and seize such contraband or evidence.

9. The Privilege Review Team and the Search Team will complete the search of non-content information and both stages of the search of the content records discussed herein as soon as is practicable but not to exceed 180 days from the date of receipt from the PROVIDER of the response to this warrant. The government will not search the records beyond this 180-day period without first obtaining an extension of time order from the Court.

10. Once the Privilege Review Team and the Search Team have completed their review of the non-content information and the content records and the Search Team has created copies of the items seized pursuant to the warrant, the original production from the PROVIDER will be sealed -- and preserved by the Search Team for authenticity and chain of custody purposes -- until further order of the Court. Thereafter, neither the Privilege Review Team nor the Search Team will access the data from the sealed original production which fell outside the scope of the items to be seized or was determined to be privileged absent further order of the Court.

11. The special procedures relating to digital data found in this warrant govern only the search of digital data pursuant to the authority conferred by this warrant and do not apply to any search of digital data pursuant to any other court order.

12. Pursuant to 18 U.S.C. § 2703(g) the presence of an agent is not required for service or execution of this warrant.

## II. **INFORMATION TO BE DISCLOSED BY THE PROVIDER**

13. To the extent that the information described in Attachment A is within the possession, custody, or control of the PROVIDER, regardless of whether such information is located within or outside of the United States, including any information that has been deleted but is still available to the PROVIDER, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the PROVIDER is required to disclose the following information to the government for each SUBJECT ACCOUNT listed in Attachment A:

    a. All contents of all wire and electronic communications associated with the SUBJECT ACCOUNT, limited to that which occurred between July 14, 2021, and the date of this warrant,[8] including:

        i. All emails, communications, or messages of any kind associated with the SUBJECT ACCOUNT, including stored or preserved copies of messages sent to and from the account, draft messages, deleted messages, and messages maintained in trash or any other folders or tags or labels, as well as all header information associated with each email or message (including the actual IP addresses of the sender and recipients of the emails), and any related documents or attachments.

---

[8] To the extent it is not reasonably feasible for the PROVIDER to restrict any categories of records based on this date restriction (for example, because a date filter is not available for such data), the PROVIDER shall disclose those records in its possession at the time the warrant is served upon it.

ii. All records or other information stored by subscriber(s) of the SUBJECT ACCOUNT, including address books, contact and buddy lists, calendar data, pictures, videos, notes, texts, links, user profiles, account settings, access logs, and files.

iii. All search history and web history, including web clicks or "History Events," by the user of the SUBJECT ACCOUNT;

iv. All web browsing activities that are identifiable with the SUBJECT ACCOUNT;

v. All records pertaining to communications between the PROVIDER and any person regarding the SUBJECT ACCOUNT, including contacts with support services and records of actions taken.

b. All other records and information, including:

i. All subscriber information, including the date on which the account was created, the length of service, the IP address used to register the account, the subscriber's full name(s), screen name(s), any alternate names, other account names or email addresses associated with the account, linked accounts, telephone numbers, physical addresses, and other identifying information regarding the subscriber, including any removed or changed names, email addresses, telephone numbers or physical addresses, the types of service utilized, account status, account settings, login IP addresses associated with session dates and times, as well as means and source of payment, including detailed billing records, **and including any changes**

**made to any subscriber information** or services, including specifically changes made to secondary email accounts, phone numbers, passwords, identity or address information, or types of services used, and including the dates on which such changes occurred, for the following accounts:

    (I) the SUBJECT ACCOUNT.

    (II) any other account associated with the SUBJECT ACCOUNT, including by means of sharing a common secondary, recovery, or alternate **email address listed in subscriber records** for the SUBJECT ACCOUNT or by means of sharing a **common phone number or SMS number listed in subscriber records** for the SUBJECT ACCOUNT, and any account that lists the SUBJECT ACCOUNT as a secondary, recovery, or alternate email address.

    (III) any other account associated with the cookie(s) associated with the SUBJECT ACCOUNT.

  ii. Any and all cookies used by any computer or web browser associated with the SUBJECT ACCOUNT, including the IP addresses, dates, and times associated with the recognition of any such cookie;

  iii. All user connection logs and transactional information of all activity relating to the SUBJECT ACCOUNT described above in Section II.13.a., including all log files, dates, times, durations, data transfer volumes, methods of connection, IP addresses, ports, routing information, dial-ups, and locations, and including specifically the specific product name or service to which the connection was made.

**III. INFORMATION TO BE SEIZED BY THE GOVERNMENT**

    14.  For each SUBJECT ACCOUNT listed in Attachment A, the search team may seize:

        a.  All information described above in Section II.13.a. that constitutes evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 1958 (Use of Interstate Commerce Facilities in the Commission of Murder-for-Hire) and 18 U.S.C. § 373(a) (Solicitation to Commit a Crime of Violence) (the "SUBJECT OFFENSES"), namely:

            i.  Information relating to who created, accessed, or used the SUBJECT ACCOUNT, including records about their identities and whereabouts.

            ii.  Information related to how and when the SUBJECT ACCOUNT was accessed or used;

            iii. Documents, records, messages communications, audio recordings, pictures, video recordings, or still captured images: regarding Victim W.D., the dark net, the dark web, Tor network, Onion sites, soliciting murder, soliciting a crime of violence, Bitcoin, and cryptocurrency;

            iv. Records, information, and Internet searches related to Victim W.D., including but not limited to photographs, videos, drawings, depicting the likenesses of Victim W.D., their relatives, neighbors, co-workers, or friends;

            v.  Documents, records, messages communications, audio recordings, pictures, video recordings, or still captured images referring to or containing the personal identifying information of victim W.D. or any relative of victim W.D., such

as names, addresses, phone numbers, credit and debit card numbers, security codes, bank account and other financial institution account numbers, Social Security numbers, and email addresses.

    vi. Records, information, and Internet searches or activity regarding murder, murder-for-hire, alibis, hitmen, the dark net, the dark web, Tor network, Onion sites, soliciting murder, soliciting a crime of violence, Bitcoin, and cryptocurrency;

    vii. Records, information, and Internet searches or activity related to threats to commit, or the commission of acts of physical violence against others;

    viii. Records and information related to the use of instant and social media messages, email communications, or other communications in connection with the Subject Offense;

    ix. Records and information related to the use of the dark web and any accounts used or controlled by CODA on the dark web or dark net;

    x. Bitcoin records, keys, and records relating to the purchase, exchange, or sale of digital currency, including Bitcoin;

    xi. Solicitation of or instructions to send wires, money service payments, bank transfers, cash payments, gift card payments, or other financial transactions;

  b. All records and information described above in Section II.13.b.

## IV. **PROVIDER PROCEDURES**

15. IT IS ORDERED that the PROVIDER shall deliver the information set forth in Section II within 10 days of the service of this warrant. The PROVIDER shall send such information to:

>Special Agent Craig Meekins
>4811 Airport Plaza Dr. Suite 500
>Long Beach, CA 90815
>Phone: (323) 229-5862
>Fax: (562) 982-1798
>Email: ctmeekins@fbi.gov

16. IT IS FURTHER ORDERED that the PROVIDER shall provide the name and contact information for all employees who conduct the search and produce the records responsive to this warrant.

x